**UNITED STATES of America**
v.
**Joseph Leo FORTIER, Jr.**
**Crim. No. 10641.**

United States District Court
D. Connecticut.
June 27, 1962.

Edward G. Mascolo, Asst. U. S. Atty., Hartford, Conn., for plaintiff.

Alexander A. Goldfarb, Hartford, Conn., for defendant.

CLARIE, District Judge.

This is a criminal action in which the defendant is charged with the unlawful possession of a firearm within the meaning of Title 26 U.S.C.A. § 5848(1), (4), § 5821(a, c, d, e). Pursuant to Rule 41(e) (1) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., the defendant had moved to suppress as evidence a sawed-off shotgun seized by the police, after a search of the defendant's motor vehicle; it is his claim that the gun had been illegally seized without a warrant.

On October 20, 1961, at 5:15 A.M., the defendant was arrested by the state police on a charge of breaking and entering after he was discovered by the watchman in a basement room of the Connecticut State Office Building. The defendant at the time was in the employ of the State of Connecticut as a security guard for this same building during the hours of 8:00 A.M. to 4:00 P.M.; he had no key to the building and no authority to be in the building at the time of his arrest; the evidence disclosed that the defendant had pried open a window with a "jimmy-bar" in order to gain entrance.

After his arrest, the state police took the prisoner to the State Police Headquarters, about one and one-half blocks distance from the State Office Building, and asked him to place all his personal property in his possession on the counter. It was revealed that he had two keys in his possession, and he admitted that one fit the ignition and the other the trunk of his motor vehicle which he had used to drive to the scene of the alleged crime.

The officer induced the accused to surrender the keys, under the false pretense that the defendant would otherwise be required to pay the expense of having his car towed from its parking place near the scene of the alleged crime. At no time did the officer express his intention to search the vehicle.

The automobile in question was illegally parked in a private driveway parking area across the street from the parking yard of the State Office Building; it was approximately 250 feet distant from the scene of the breaking and entering.

After processing and booking the defendant at police headquarters, the officer returned to the defendant's parked car at about 7:00 A.M. and proceeded to search the vehicle for stolen loot, burglar

tools, and weapons. In the trunk of the vehicle, the officer found a duffel bag containing a 16-gauge single barrel bolt action shotgun having a barrel fourteen and one-eighth (14⅛) inches in length, without a serial number, and upon which no tax had been paid, all violations of Federal law. The weapon was confiscated and turned over to Federal officials. It is the illegal possession of this firearm as hereinbefore noted with which the defendant is charged in this indictment.

The defendant maintains that the contraband weapon was discovered and taken by the police officer by an unlawful search and seizure in violation of the Fourth Amendment to the Federal Constitution and Article I, Section 8 of the State Constitution.

■ " * * * the arrest having been made by state officers supposedly for an offense against the State (of Connecticut) * * *, its validity is to be determined by reference to the law of that State." Collins v. United States, 289 F.2d 129 (5 Cir. 1961).

The defendant was arrested by a state officer without a warrant, at the scene of the alleged crime, on a charge of breaking and entering with criminal intent in violation of Section 53–76 of the Connecticut General Statutes, Revision of 1958. The officer acted by virtue of Section 6–49 of said Statutes which provides in part,

"members of the state police department * * * shall arrest, without previous complaint and warrant, any person who such officer has reasonable grounds to believe has committed or is committing a felony."

In this instance there was adequate factual grounds to satisfy this requirement.

■ The real question is whether or not the search was so disjoined from the arrest, in point of time, as to be no longer incident to the arrest. The possession by the defendant of a vehicle at the time of the commission of the crime of breaking and entering was revealed to the state officer shortly after his arrest at 5:15 A.M. at the office building. The prisoner was promptly taken to the police station to be booked, finger-printed and processed administratively. The police headquarters, the office building and the location of the parked vehicle were only one and one-half blocks distance. As soon as the defendant had been formally detained, the search promptly proceeded at approximately 7:00 A.M. and the contraband firearm was the fruit of the search. The police search action was substantially contemporaneous with the arrest. There was no unreasonable delay. Bartlett v. United States, 232 F.2d 135 (5 Cir. 1956).

"The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted." Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

It would be no different than if a bank robber were arrested by an officer knowing at the time that the getaway car was parked on another street 250 feet away. Certainly, it would not be unreasonable to expect the arresting officer to deliver and formally detain his prisoner at the police station before going back to pick up the vehicle or search it for loot or the tools or weapons of the crime.

■ "A search may be conducted, extending to agencies within the control of the arrested person, if incident to a valid arrest." Fraker v. United States, 294 F.2d 859, 862 (9 Cir. 1961); United States v. Rabinowitz, 339 U.S. 56, 61, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

[4] " * * * (I)t is only unreasonable searches and seizures which come within the constitutional interdict. The test of reasonableness cannot be stated in

rigid and absolute terms. 'Each case is to be decided on its own facts and circumstances.'" Harris v. United States, 331 U.S. 145, 150, 67 S.Ct. 1098, 91 L. Ed. 1399 (1947).

"When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for." Abel v. United States, 362 U.S. 217, 238, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).

The Constitution of Connecticut, Article First § 8, invoked by the defendant, provides in almost identical language for the security of its people, as does the Fourth Amendment to the Federal Constitution. It is the opinion of this Court that the State Constitution has been complied with. State v. Reynolds, 101 Conn. 224, 125 A. 636 (1924); Pickett v. Marcucci's Liquor, 112 Conn. 169, 151 A. 526 (1930).

This Court finds the search and seizure in this instance reasonable and valid. The defendant's motion for return of property and to suppress evidence is denied.